Filed 11/18/20  In re D.D. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION THREE

| | |
|---|---|
| In re D.D. et al., Persons Coming Under the Juvenile Court Law. | B304210 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>I.N.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. Nos. 19CCJP04973 A, B) |

APPEAL from orders of the Superior Court of Los Angeles County, Sabina A. Helton, Judge.  Conditionally affirmed and remanded with directions.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

I.N. (mother) appeals from jurisdictional and dispositional orders of the juvenile court declaring her children, D. (born in July 2014) and Z. (born in November 2016) juvenile court dependents and removing them from her care.  Mother contends the Los Angeles County Department of Children and Family Services (DCFS) did not comply with the inquiry and notice requirements in the state statutes implementing the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.)  We conclude that DCFS's ICWA inquiry was adequate as to father, but not as to mother.  We therefore conditionally affirm and remand with directions.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.**

**Background**

In August 2019, DCFS received a report that D.D. (father) had fled with five-year-old D., mother had run through traffic while holding two-year-old Z., and mother was on an involuntary psychiatric hold pursuant to Welfare and Institutions Code[1] section 5150.  Both mother and father were alleged to have significant untreated mental health issues.  The children were detained from mother and father and placed with the maternal grandmother.

In August 2019, DCFS filed a juvenile dependency petition pursuant to section 300, subdivisions (a), (b), and (j).  The petition alleged mother and father engaged in domestic violence in the children's presence (counts a-1, b-3, j-3); mother suffered mental and emotional problems, including auditory and visual

---

[1] All subsequent undesignated statutory references are to the Welfare and Institutions Code.

2

hallucinations, suicidal and homicidal ideation, bipolar disorder, and post-traumatic stress disorder, for which she had failed to seek treatment (counts b-1, j-1); and father suffered mental and emotional problems, including bipolar disorder, for which he had failed to seek treatment (counts b-2, j-2). On September 17, 2019, DCFS filed an amended petition adding counts alleging that mother physically abused D. by striking him with a belt and brush (counts a-2, b-4, j-4), and that father physically abused D. by striking his body, including his penis, with a belt and belt buckle (counts a-3, b-5, j-5).

On October 1, 2019, the court sustained all allegations of the amended petition and continued the disposition hearing to allow DCFS to complete an ICWA investigation. On January 8, 2020, the court ordered the children removed from both parents, ordered DCFS to provide mother with reunification services, and denied father reunification services pursuant to section 361.5, subdivision (b).

## II.

### Facts Relevant to ICWA

*A.     Mother*

On August 7, 2019, mother submitted an ICWA-020 form, which stated she may have Seminole Indian ancestry through her father (the children's maternal grandfather), Bruce N.

The jurisdiction/disposition report, dated October 1, 2019, stated that the maternal grandparents denied that they were registered members of any tribe.

*B.     Father*

On August 7, 2019, father submitted an ICWA-020 form, on which he checked a box indicating "I am or may be a member of, or eligible for membership in, a federally recognized tribe."

Below, father wrote next to "Name of tribe(s)": "Not sure—a tribe from Oklahoma."

At the detention hearing, father said his Indian ancestry was on his father's side, and his aunt and uncle would have more information. The juvenile court directed DCFS to "look into that and, if appropriate, to give I.C.W.A. notices."

At the October 1, 2019 jurisdiction hearing, father's counsel provided the court and DCFS with the paternal great-uncle's name and phone number. The court directed DCFS to speak to the paternal great-uncle and give ICWA notice if appropriate.

On October 17, 2019, DCFS mailed ICWA notices to the Blackfeet Tribe of Montana, the Secretary of the Interior, and the Bureau of Indian Affairs. The notices included the names and birthdates (or partial birthdates) for father, the paternal grandmother, and the paternal great-grandmother. A children's social worker (CSW) contacted the Blackfeet tribe several times in November and December 2019, and the disposition hearing was continued to December 4, and then to January 8, 2020, pending a response from the tribe.

On January 2, 2020, DCFS provided the court with copies of letters from the Blackfeet tribe's ICWA coordinator. The letters identified the two children by name and stated as follows: "In researching the Blackfeet Tribal Enrollment records, I was not able to find the above child[ren] . . . on the tribal rolls. [¶] As of August 30, 1962, our blood quantum requirement for enrollment is 1/4 Blackfeet blood. The above the children [are] not eligible for enrollment, and the [children] [are] not domiciled on the Blackfeet Indian reservation. [¶] . . . [¶] Therefore [neither] above named child is . . . an 'Indian Child' as defined by the Indian Child Welfare Act."

*C.	ICWA Finding*

At the January 8, 2020 disposition hearing, father told the court that the paternal great-uncle and paternal great-grandmother were registered members of the Blackfeet tribe. The court acknowledged the children's Blackfeet ancestry, but said that the Blackfeet tribe had determined the children were not eligible for tribal membership. It therefore found there was "no reason to know the children are Indian children within the meaning of ICWA."

Mother timely appealed from the jurisdictional and dispositional findings and orders.

**DISCUSSION**

**I.**

**ICWA**

ICWA was enacted " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*); see 25 U.S.C. § 1902.) Under ICWA, an "Indian child" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition of "Indian child"].) It is up to the tribe to decide whether a child is an Indian child under ICWA. (*Isaiah W.*, at p. 15.)

5

"[T]he burden of coming forward with information to determine whether an Indian child may be involved . . . in a dependency proceeding does not rest entirely—or even primarily—on the child and his or her family." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 233.)  Rather, "[j]uvenile courts and child protective agencies have 'an affirmative and continuing duty to inquire' whether a dependent child is or may be an Indian child." (*Ibid.*; see also *Isaiah W.*, *supra*, 1 Cal.5th at pp. 9–11; § 224.2, subd. (a).)

This affirmative duty to inquire is a two-step process. First, if a child is removed from his or her parents and placed in the custody of a county welfare department, the department has a duty to "ask[ ] the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child *is, or may be*, an Indian child . . . ." (§ 224.2, subd. (b), italics added.)  The court must make a similar inquiry when the parents first appear in court:  "[T]he court shall ask each participant present in the hearing whether the participant *knows or has reason to know* that the child is an Indian child." (§ 224.2, subd. (c), italics added.)  The court's duty of initial inquiry includes requiring each party to complete California Judicial Council Form ICWA-020, Parental Notification of Indian Status. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

Second, if the court or social worker has "*reason to believe* that an Indian child is involved in a proceeding," the court or social worker must "make further inquiry regarding the possible Indian status of the child," by, among other things, interviewing the parents and extended family members, and contacting the tribe that may reasonably be expected to have information about

6

the child's membership, citizenship status, or eligibility. (§ 224.2, subd. (e), italics added; see 224.3, subd. (a)(5)(C).)

If, after the initial and further inquiries, there is *reason to know* that an Indian child is involved, notice of the proceedings must be provided to the parent, legal guardian, or Indian custodian and the child's tribe. (§ 224.2, subd. (f).) There is reason to know a child is an Indian child if any one of six statutory criteria is met—e.g., if the court is advised that the child "is an Indian child," the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe. (*Id.*, subd. (d).)

An Indian child's tribe has the right to intervene at any point in an Indian child custody proceeding. (§ 224.4.) A determination by an Indian tribe "that a child is or is not a member of, or eligible for membership in, that tribe . . . shall be conclusive." (§ 224.2, subd. (h).)

## II.

### DCFS Satisfied Its Duty of Inquiry Under ICWA as to Father, But Not as to Mother

Mother contends the juvenile court erred in finding that ICWA did not apply. Specifically, she contends: (1) DCFS did not conduct an adequate inquiry into father's possible Indian ancestry; (2) DCFS did not conduct an adequate inquiry into mother's possible Indian ancestry; and (3) DCFS provided inadequate ICWA notice to the Blackfeet tribe.

On appeal, we review the juvenile court's ICWA findings for substantial evidence. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051; *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467; see

7

§ 224.2, subd. (i)(2) [ICWA findings "subject to reversal based on sufficiency of the evidence"].)  But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied.  (*In re D.S.*, at p. 1051.)

A.     *DCFS Complied with its Duty to Inquire into Father's Possible Indian Ancestry*

Mother contends DCFS did not conduct an adequate inquiry into father's possible Indian ancestry because it did not interview paternal grandmother Z.S. or paternal great-uncle Tommy.  She says:  "[F]ather and Tommy told the court and county counsel at the hearing that Tommy was a registered member of the Blackfeet tribe, along with his mother, who would have been the minor's [paternal] great-grandmother."  Nonetheless, "it does not appear the Department ever interviewed paternal great-uncle Tommy."  "Likewise, the paternal grandmother, Z.S., who is registered-member Tommy's sister, was also not interviewed."

Mother is correct that DCFS appears not to have spoken to paternal grandmother Z.S. about the children's Indian ancestry, but that failure does not constitute reversible error.  The paternal grandmother was under conservatorship and, according to an earlier report, "is unable to relay any information."  DCFS was required under ICWA to contact only those persons "that *may reasonably be expected to have information* regarding the child's membership, citizenship status, or eligibility."  (§ 224.2, subd. (e)(2)(C), italics added; see *In re D.S.*, *supra,* 46 Cal.App.5th at p. 1041, 1053.)  Based on the paternal grandmother's conservatorship, DCFS reasonably could have concluded that she could not have provided any information of value, and thus that no further inquiry was needed.  (See *In re D.S.,* at p. 1053 ["The

Agency is not required to 'cast about' for information or pursue unproductive investigative leads."].)

Mother also is correct that none of the reports in the appellate record say that DCFS spoke to paternal great-uncle Tommy. However, two weeks after father provided DCFS with Tommy's name and phone number, DCFS sent ICWA notices to the Blackfeet Tribe of Montana. Because father had not been able to identify the tribe from which his family was descended, we infer that DCFS must have spoken to great-uncle Tommy, who was the only known source of the information included in the ICWA notices.

The present case thus is distinguishable from *In re N.G.* (2018) 27 Cal.App.5th 474, on which mother relies. In *In re N.G.*, the appellate court held the social services department had not made an adequate ICWA inquiry because, among other things, it had failed to contact paternal cousins who the paternal grandfather had said were registered members of the Cherokee tribe. (*Id.* at p. 482.) In the present case, in contrast, DCFS did not fail to speak to the family member most knowledgeable about the child's Indian ancestry; to the contrary, as we have said, it appears DCFS spoke to paternal uncle Tommy and provided the information obtained from him to the Blackfeet tribe.

Finally, we conclude that the omission of some biographical information from the ICWA notices was not reversible error because ICWA notice was not required. As indicated above, notice to the tribe and/or Indian custodian is required by ICWA only if there is "*reason to know . . .* that the child is an Indian child" in dependency proceedings. (§ 224.2, subd. (f).) In the present case, there was not "reason to know" the children were Indian children: To the contrary, the Blackfeet tribe had advised

9

DCFS in writing in December 2019, after several telephone conversations with the CSW, that the children were "not . . . listed . . . on the tribal rolls" and "[were] not eligible for enrollment" in the Blackfeet tribe under the tribe's "blood quantum requirement for enrollment," i.e., "1/4 Blackfeet blood." Because ICWA notice therefore was not required, the omission of some biographical information from the notices was not reversible error.

B.    *The Matter Is Remanded to Allow DCFS to Conduct an Adequate Initial Inquiry into Mother's Possible Indian Ancestry*

Mother contends DCFS did not conduct an adequate inquiry into her possible Indian ancestry. She notes that although she reported that she had Seminole ancestry, DCFS did not adequately explore with the maternal grandparents mother's possible link to a Seminole tribe. We agree.

The jurisdiction/disposition report states that the maternal grandparents denied that they were registered members of any Indian tribe. However, the duty of inquiry under ICWA is not whether a child's ancestors are registered members of a tribe, but rather "whether the child *is, or may be*, an Indian child . . . ." (§ 224.2, subd. (b), italics added.) Because we cannot determine from the record whether DCFS made the broader inquiry required by statute, the case must be remanded.

On remand, the court shall direct DCFS to conduct such inquiry, including interviewing the maternal grandparents about the children's Indian ancestry, and file documentation of its efforts. Based on the information obtained by such inquiry, the court shall determine whether further inquiry and/or notice is required. If notice is required and a tribe responds that the

10

children are Indian children, then the jurisdictional and dispositional orders shall be vacated, and further proceedings conducted under ICWA.

## DISPOSITION

The jurisdictional and dispositional orders are conditionally affirmed. The matter is remanded to the juvenile court with directions to DCFS to comply with ICWA in accordance with the views expressed in this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

DHANIDINA, J.

11